**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Patrice Jerome,<br><br>          Plaintiff,<br><br>vs.<br><br>Midway Holding, Inc. et al.,<br><br>          Defendant. | No. CV 03-1913-PHX-MHM<br><br>**ORDER** |

Presently before the Court is Defendants' Motion for Summary Judgment (Dkt. #65), Defendants' Undisputed Statement of Facts in Support of its Motion for Summary Judgment (Dkt. #66), Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment (Dkt. #74), Plaintiff's Statement of Facts in Opposition to Defendants' Motion for Summary Judgment (Dkt. #73) and Defendants' Reply to Plaintiff's Response (Dkt. #77). The Court has considered all relevant documents and, finding oral argument unnecessary, issues the following Order.

## BACKGROUND

Plaintiff, Patrice Jerome, filed a Complaint, on September 30, 2003, asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, Civil Rights Act of 1991, 42 U.S.C. § 1981, and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621

1    ("ADEA") against her former employer and Defendants Midway Holdings, Inc., Midway

2    Auto Team, Midway Infinity, Midway Nissan, Midway GMC, Midway Buick, Midway

3    Pontiac, Midway Chevrolet, and the Automotive Investment Group, Arizona (collectively

4    "Defendants" or "Midway").

5        Plaintiff, who is a white female over the age of forty, alleges two instances of sexual

6    harassment during her employment at Midway.  On Plaintiff's first day of work at Midway,

7    Plaintiff's coworker Mike Moss greeted Plaintiff by asking her how a "cunt like her" got a

8    job at Midway.  Then on October 14, 2002, three months before Plaintiff's employment at

9    Midway ended, Plaintiff alleged to have overheard her then-supervisor Patrick Beaman call

10   her a "worthless cunt" while he walked behind her on the showroom floor after he fired her

11   for failing to show up to work on Friday, October 11, 2002 and to a company job fair on

12   Saturday, October 12, 2002.  Mr. Beaman's firing of Plaintiff was later revoked and Plaintiff

13   retained her job at that time.  Instead, Plaintiff was placed on probation.  Plaintiff has stated

14   that she did not report Mr. Beaman's conduct because she was ashamed that someone would

15   refer to her in such a derogatory manner.

16       After this incident, Mr. Beaman no longer supervised Plaintiff.  Instead, Jack Colson

17   became Plaintiff's supervisor.   Over the next three months, until Plaintiff's ultimate

18   termination, Plaintiff received five written reprimands.  Mr. Colson terminated Plaintiff on

19   December 6, 2002, for "lack of performance."  Plaintiff subsequently filed the instant lawsuit

20   alleging claims for discrimination based on sex and religion, age discrimination, retaliation,

21   sexual harassment, racial harassment, and economic damages.

22       Defendants have filed the instant Motion for Summary Judgment asserting that all of

23   Plaintiff's claims fail as a matter of law.  Plaintiff has filed a Response opposing Defendants'

24   Motion for Summary Judgment claiming that Plaintiff, in fact, did lodge complaints of

25   discrimination in the workplace; that the discriminatory work environment at Midway hurt

26   Plaintiff's job performance; that the discriminatory work environment at Midway was

27   sufficiently severe or pervasive to be actionable; that Midway is liable for Mr. Beaman's

28   discriminatory conduct as a matter of law because Midway failed to take prompt effective

1  action in response to Plaintiff's complaint of discrimination; and that Plaintiff actually did

2  mitigate her damages.

3                                    **LEGAL STANDARD**

4         Summary judgment is properly granted when no genuine and disputed issues of

5  material fact remain, and when, viewing the evidence most favorably to the non-moving

6  party, the movant is clearly entitled to prevail as a matter of law.  Fed.R.Civ.P. 56; Celotex

7  Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Eisenberg

8  v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir.1987).

9         Initially, the moving party bears the burden of showing that there is no material factual

10  dispute.  Therefore, the court must regard as true the opposing party's evidence, if supported

11  by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d

12  at 1289.  The court must draw all reasonable inferences in favor of the party against whom

13  summary judgment is sought.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

14  574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Intel Corp. v. Hartford Accident & Indem.

15  Co., 952 F.2d 1551, 1558 (9th Cir.1991).

16         The burden then shifts to the non-movant to establish the existence of material fact.

17  Celotex, 477 U.S. at 323, 106 S.Ct. 2548.  The non-movant "must do more than simply show

18  that there is some metaphysical doubt as to the material facts" by "com[ing] forward with

19  'specific facts showing that there is a genuine issue for trial.'"  Matsushita, 475 U.S. at

20  586-87, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)).

21         A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could

22  return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

23  248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  The non-movant's bare assertions, standing

24  alone, are insufficient to create a material issue of fact and defeat a motion for summary

25  judgment. Id. at 247-48, 106 S.Ct. 2505.

26

27

28

1

**DISCUSSION**

2

**I.    SEX AND RELIGION DISCRIMINATION CLAIMS**

3       Title VII prohibits an employer from discriminating against an employee based on

4   race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2.  To establish a *prima*

5   *facie* case of disparate treatment for discrimination based on sex and religion, Plaintiff must

6   show the following: (1) she belongs to a protected class; (2) she was qualified for the

7   position; (3) she was subjected to an adverse employment action; and (4) that Plaintiff's

8   employer treated Plaintiff differently than a similarly situated employee who does not belong

9   to the same protected class as Plaintiff.  Cornwell v. Electra Cent. Credit Union, 439 F.3d

10  1018, 1028 (9th Cir. 2005) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802

11  (1973).  The Ninth Circuit "has explained that under the McDonnell Douglas framework, 'the

12  requisite degree of proof necessary to establish a *prima facie* case for Title VII on summary

13  judgment is minimal and does not even need to rise to the level of a preponderance of the

14  evidence.'"  Id.  (quoting Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994)); see

15  Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998).

16      If the plaintiff succeeds in establishing a *prima facie* case, the burden of production

17  shifts to the defendant to articulate a legitimate, nondiscriminatory reason for terminating the

18  plaintiff's employment.  McDonnell Douglas, 411 U.S. at 802.  If the defendant does so, the

19  plaintiff must demonstrate that the defendant's articulated reason is a pretext for unlawful

20  discrimination by "'either directly persuading the court that a discriminatory reason more

21  likely motivated the employer or indirectly by showing that the employer's proffered

22  explanation is unworthy of credence.'"  Chuang v. Univ. of Cal. Davis, 225 F.3d 1115, 1124

23  (9th Cir. 2000) (quoting Texas Dept. of Cmty Affairs v. Burdine, 450 U.S. 248, 256 (1981)).

24  However, the plaintiff's evidence must be both specific and substantial to overcome the

25  legitimate reasons put forth by the defendant.  E.g., Bergene v. Salt River Project

26  Improvement & Power Dist., 272 F.3d 1136, 1143 (9th Cir.2001); Godwin, 150 F.3d at 1221;

27  Bradley v. Harcourt, Brace & Co., 104 F.3d 267, 270 (9th Cir.1996).

28

1   If the plaintiff demonstrates pretext, then the burden-shifting framework disappears,
2   and the only remaining issue is "'discrimination vel non.'"  <u>Reeves v. Sanderson Plumbing</u>
3   <u>Prods.</u>, 530 U.S. 133, 143 (2000) (<u>quoting</u> <u>U.S. Postal Service Bd. of Governors v. Aikens</u>,
4   460 U.S. 711, 714 (1983)).  While the burden of production may shift, the "ultimate burden
5   of persuading the trier of fact that the defendant intentionally discriminated against the
6   plaintiff remains at all times with the plaintiff."  <u>Texas Dept. of Cmty Affairs</u>, 450 U.S. at
7   253.

8   **A**.   **DISCRIMINATION BASED ON RELIGION**

9   Plaintiff asserts a claim of discrimination based on religion.  Plaintiff has asserted that
10  her supervisor directed her not to hire strongly religious people because to do well at
11  Midway, salespeople need to have "a little larceny in their hearts."  However, Plaintiff does
12  not assert that she was discriminated against because of her own personal religious
13  convictions.  Without such an assertion, Plaintiff has not shown that she belongs to a
14  protected class based on her religion or religious beliefs.  Thus, Plaintiff has not shown a
15  *prima facie* case of discrimination based on religion.  The Court grants Defendants' Motion
16  for Summary Judgment of Plaintiff's religious discrimination claim.

17  **B.**   **DISCRIMINATION BASED ON SEX**

18  Regarding Plaintiff's sex discrimination claim, Defendants do not appear to dispute
19  that Plaintiff is a member of a protected class, that Plaintiff was qualified for the position at
20  Midway, nor that she was subjected to an adverse employment action.  Defendants' simply
21  state that Plaintiff cannot show that other employees with similar qualifications were treated
22  more favorably.  Defendants claim that when asked in her deposition to identify similarly-
23  situated counterparts who received more favorable treatment than she did, Plaintiff responded
24  by naming her predecessor Bob Carter and a recruiting director at Midway Chevrolet John
25  Ferguson.  In contrast to Plaintiff's account, Defendants assert that Mr. Carter was terminated
26  for performance problems similar to Plaintiff's, including failing to recruit an adequate
27  number of individuals.  Furthermore, Defendants contend that Mr. Ferguson did not have the
28  documented history of job performance problems that Plaintiff had.

1    The Court considers whether Plaintiff has met the fourth prong under McDonald
2    Douglas for a *prima facie* showing of sex and age discrimination.  In light of the minimal
3    degree of proof necessary to establish a *prima facie* case for Title VII discrimination, the
4    Court finds that Plaintiff has made a *prima facie* showing with regard to this count.  The
5    basis for this determination is that, notwithstanding Plaintiff's documented job performance
6    history, Plaintiff was subjected to sexually-based named calling and vulgarity.  There is no
7    evidence that either Mr. Carter or Mr. Ferguson ever were subjected to such inappropriate
8    verbal abuse.  Therefore, the Court finds that Plaintiff has met the fourth prong of the
9    McDonald Douglas test by showing that her former employer treated her differently than
10   other similarly situated employees who do not belong to the same protected class as Plaintiff.
11   Accordingly, the Court finds that Plaintiff has made a *prima facie* showing of Title VII sex
12   discrimination.

13   Once the Plaintiff establishes a *prima facie* case of discrimination, then the
14   Defendants are required to articulate a legitimate, nondiscriminatory reason for terminating
15   the plaintiff's employment. McDonnell Douglas, 411 U.S. at 802. Here, the Defendants have
16   provided evidence that Plaintiff was terminated due to poor performance.  In fact, Midway
17   placed Plaintiff on probationary status after she failed to show up to work on Friday, October
18   11, 2002 and skipped a company job fair on Saturday, October 12, 2002. See October 15,
19   2002 Inter-Office Memorandum at Defendants' Exh. F.   Initially, Midway terminated
20   Plaintiff for these missed events but then, as a compromise, Midway reinstated Plaintiff and
21   put her on probationary status.   Defendants provide further evidence of Plaintiff's
22   performance problems at Midway by way of a November 4, 2002 Memorandum that
23   documented Plaintiff's failure to recruit the required number of candidates for the salesperson
24   job (Exh. G); a November 20, 2002 Memorandum that documented Plaintiff's late arrival to
25   a training class and producing insufficient salesperson candidates (Exh. H); and a December
26   2, 2002 Inter-Office Memorandum documenting Plaintiff's sub-par quality of recruits and
27   Plaintiff's failing to answer telephone messages from 148 candidates who called her in
28   response to a job advertisement (Exh. I).  Defendants have met their burden of production.

1    The burden then shifts back to the Plaintiff to demonstrate that the Defendants'

2  articulated reason is a pretext for unlawful discrimination.  In <u>Reeves</u>, 530 U.S. 133, 120

3  S.Ct. 2097, 147 L.Ed.2d 105, the Supreme Court held that the factfinder may infer "the

4  ultimate fact of intentional discrimination" without additional proof once the plaintiff has

5  made out her *prima facie* case, if the factfinder believes that the employer's proffered

6  nondiscriminatory reasons lack credibility.  <u>Id.</u> at 147, 120 S.Ct. 2097; <u>accord</u> <u>Chuang</u>, 225

7  F.3d at 1127 ("[A] disparate treatment plaintiff can survive summary judgment without

8  producing any evidence of discrimination beyond that constituting his *prima facie* case, if

9  that evidence raises a genuine issue of material fact regarding the truth of the employer's

10  proffered reasons.").  Following <u>Reeves</u>, the Ninth Circuit has held that the plaintiff can

11  prove pretext either "(1) indirectly, by showing that the employer's proffered explanation is

12  'unworthy of credence' because it is internally inconsistent or otherwise not believable, or

13  (2) directly, by showing that unlawful discrimination more likely motivated the employer."

14  <u>Id.</u> (quoting <u>Godwin v. Hunt Wesson, Inc.</u>, 150 F.3d 1217, 1220-22 (9th Cir. 1998)).  In

15  addition, courts may consider the cumulative evidence – both indirect and direct – to the

16  extent that both are available.  <u>Id.</u>  "Circumstantial evidence of pretext must be specific and

17  substantial in order to survive summary judgment."  <u>Bergene</u>, 272 F.3d at 1142 (<u>citing</u>

18  <u>Godwin</u>, 150 F.3d at 1222).  However, "any indication of discriminatory motive . . . may

19  suffice to raise a question that can only be resolved by a factfinder," and for that reason

20  "summary judgment for the defendant will ordinarily not be appropriate on any ground

21  relating to the merits because the crux of a Title VII dispute is the elusive factual question

22  of intentional discrimination."  <u>Warren v. City of Carlsbad</u>, 58 F.3d 439, 443 (9th Cir. 1995)

23  (internal quotation marks omitted).

24    Though Plaintiff has not presented direct evidence that the Defendants' articulated

25  reason is a pretext for unlawful discrimination, Plaintiff has presented specific instances of

26  sexual discrimination and a discriminatory motive for firing her.  The Court finds that it

27  should be up to a jury to determine whether Defendants' motives for firing Plaintiff were

28

1  discriminatory in nature.  Accordingly, Defendants' Motion for Summary Judgment is denied

2  as to Plaintiff's sex discrimination cause of action.

3  **II.    AGE DISCRIMINATION CLAIM**

4          Plaintiff also has asserted an age discrimination claim against Midway.  Under the

5  ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any

6  individual or otherwise discriminate against any individual with respect to his compensation,

7  terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C.

8  § 623(a)(1).

9          To overcome summary judgment on her age discrimination claim, Plaintiff must

10  establish a *prima facie* case of discrimination either through evidence showing the employer

11  intended to discriminate or through a presumption arising from proof of the McDonnell

12  Douglas factors. Villodas v. HealthSouth Corp., 338 F. Supp. 2d 1096, 1101 (D. Ariz. 2004)

13  (citing McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824, and Wallis, 26 F.3d at 889).

14  Plaintiff must show that (1) she was over 40 years of age; (2) she was satisfactorily

15  performing her employment responsibilities;  (3) she was discharged from her employment;

16  and (4) she was replaced by a substantially younger employee with equal or inferior

17  qualifications. Coleman v. Quaker Oats Co., 232 F.3d 1271, 1281 (9th Cir. 2000); Mundy

18  v. Household Finance Corp., 885 F.2d 542, 545 (9th 1989).

19          In support of her claim of age discrimination, Plaintiff alleges that she was directed

20  to hire "twenty year old white men with flat guts."  Plaintiff's Statement of Facts ("PSOF")

21  ¶ 23.  The Court interprets Plaintiff's claim of age discrimination to be based on Midway's

22  alleged discrimination of the potential job candidates based on the job candidates' ages.

23  Plaintiff has not, however, asserted that she personally experienced disparate treatment based

24  on her own age.  Nor has Plaintiff asserted that she was replaced by a substantially younger

25  employee with equal or inferior qualifications.

26          Plaintiff has not established a *prima facie* case of age discrimination.   Thus,

27  Defendants' Motion for Summary Judgment is granted with regard to Plaintiff's claim of age

28  discrimination based on the ADEA.

1  **III.    RETALIATION CLAIM**

2      Plaintiff claims that she was discharged from her job at Midway in retaliation for

3  complaining to General Manager John Cleaves about Supervisor Beaman's direction only to

4  hire "twenty year old white guys with flat guts."  PSOF ¶ 23.

5      Title VII makes it unlawful for an employer to retaliate against an employee because

6  she has engaged in a protected activity.  See 42 U.S.C. § 2000e-3(a).  Protected activities

7  includes, *inter alia*, opposing an unlawful employment practice.  Silver v. KCA, Inc., 586

8  F.2d 138, 141 (9th Cir. 1978).  To establish a *prima facie* case of retaliation, a plaintiff must

9  show the following: (1) that she engaged in a protected activity, (2) that she suffered an

10 adverse employment decision, and (3) that there was a causal link between the protected

11 activity and the adverse employment decision.  Villiarimo v. Aloha Island Air, Inc., 281 F.3d

12 1054, 1064 (9th Cir. 2000) (citing Yartzoff v. Thomas, 809 F.2d 1371, 1375 (9th Cir. 1987));

13 see also Chaboya v. Am. Nat'l Red Cross, 72 F. Supp. 2d 1081, 1093 (D. Ariz. 1999).

14     Plaintiff asserts that her termination was the result of her participation in Title VII

15 protected activity.  In other words, Plaintiff claims that her termination was a direct result of

16 her not hiring candidates based on the race-based discriminatory guidelines her employer had

17 established.   Plaintiff has supported her assertion with testimony evidence, that her

18 supervisor Mr. Beaman directed her to hire twenty-year-old white guys with flat guts.

19 Specifically, Plaintiff testified that she complained to Mr. Cleaves that she "was frustrated

20 [that she] could [not] find enough 20-year old white guys with flat guts that wanted to sell

21 cars"; that she "complained [to Mr. Cleaves] that [she] could not find enough 20-year old

22 white guys who wanted to sell cars"; and she "told [Mr. Cleaves] that she was having

23 difficulty with the hiring criteria, finding enough of the candidates as per Mr. Beaman.  He

24 wanted 20-year-old white guys with flat guts."  Plaintiff's Statement of Facts ("PSOF") at

25 175:1-13, 179:12-19, and 15-18.

26     Defendants assert that Plaintiff was not engaged in protected activity because (1)

27 Plaintiff failed to communicate her complaint in a manner that could reasonably be

28 understood as opposing a discriminatory practice; (2) Plaintiff's employment was terminated

1    for legitimate, non-retaliatory reasons with no evidence of pretext; and (3) no causal

2    connection exists between Plaintiff's alleged protected activity and her termination.

3           Defendants contend that Plaintiff's vague comments to Mr. Cleaves were not

4    conveyed in a manner that would reasonably lead to an understanding that she was opposing

5    an unlawful hiring practice.  Defendants cite a number of cases in which courts have held that

6    a plaintiff's vague complaint failed to put her employer on notice that she was opposed to an

7    unlawful hiring practice.  See Dupont-Lauren v. Schneider (USA), Inc., 994 F. Supp. 802,

8    823 (S.D. Tex 1998) (granting summary judgment because plaintiff's vague comments about

9    the difficulty of being a woman in the company failed to apprize her employer of any

10   particular activity she perceived as discriminatory); Jowers v. Lakeside Family and

11   Children's Servs., 2005 WL 3134019, at *5 (S.D.N.Y. Nov. 22 2005); Galdieri-Ambrosini

12   v. Nat'l Realty & Dev. Corp., 136 F.3d 276 (2d Cir. 1998); Barber v. CSX Distrib. Servs.,

13   68 F.3d 694, 701 (3d Cir. 1995); Alack v. Beau Rivage Resorts, Inc., 286 F. Supp. 2d 771,

14   774-75 (S.D. Miss. 2003).

15          Here, Plaintiff points to a number of instances in which she complained to Mr.

16   Cleaves that she was frustrated with the hiring directives as Mr. Beaman had established

17   them – that Plaintiff was to hire twenty-year old white guys with flat guts.  Plaintiff's

18   comments were vague at best.  Moreover, Plaintiff made these comments in reference to her

19   lackluster hiring record and her warnings of poor job performance.  Plaintiff's comments

20   appear more like an excuse for poor performance, rather than notifying her employer that she

21   was opposing a discriminatory hiring practice.  In fact, at no point did Plaintiff state that she

22   opposed an illegal hiring practice.  Nor did Plaintiff file any sort of official report or Equal

23   Employment Opportunity Commission complaint opposing the discriminatory hiring

24   practices.  Plaintiff has not made a *prima facie* case that her firing was out of retaliation for

25   opposing a discriminatory hiring practice.

26   **IV.     SEXUAL HARASSMENT CLAIM**

27          Plaintiff asserts that her sexual harassment claim is based on two incidents of sexist

28   name-calling directed at her.  The two incidents of alleged sexual harassment are as follows.

1    On Plaintiff's first day of work at Midway, Plaintiff's coworker Mike Moss greeted Plaintiff

2    by asking her how a "cunt like her" got a job at Midway.  Then on October 14, 2002, Plaintiff

3    alleges to have overheard Mr. Beaman call her a "worthless cunt" while walking behind her

4    on the showroom floor.  This alleged name-calling occurred after Mr. Beaman fired Plaintiff

5    for failing to show up to work on Friday, October 11, 2002 and to a company job fair on

6    Saturday, October 12, 2002.  Mr. Beaman's firing was later revoked and Plaintiff retained her

7    job at that time but was placed on probation.  Plaintiff has stated that she did not report Mr.

8    Beaman's conduct because she was ashamed that someone would refer to her in such a

9    derogatory manner.

10          To have a valid claim of sexual harassment requires "[c]onduct . . . severe or pervasive

11   enough to create an objectively hostile or abusive work environment . . . ."  Oncale v.

12   Sundowner Offshore Servs., Inc. 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).

13   See also Motero v. AGCO Corp., 192 F.3d 856, 960 (9th Cir. 1999).  "An employer is liable

14   under Title VII for conduct giving rise to a hostile environment where the employee proves

15   (1) that [s]he was subjected to verbal or physical conduct of a harassing nature, (2) that this

16   conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter

17   the conditions of the victim's employment and create an abusive working environment."

18   Pavon v. Swift Trans. Co., Inc., 192 F.3d 902, 908 (9th Cir. 1999).  "'Conduct must be

19   extreme to amount to a change in the terms and conditions of employment.'  To be actionable

20   under Title VII, 'a sexually objectionable environment must be both objectively and

21   subjectively offensive, one that a reasonable person would find hostile or abusive, and one

22   that the victim in fact did perceive to be so.'"  Montero v. AGCO Corp., 192 F.3d 856, 860

23   (9th Cir. 1999) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 2284,

24   2283, 141 L.Ed.2d 662 (1998)).

25          Courts are to determine whether an environment is sufficiently hostile or abusive by

26   "'looking at all the circumstances,' including the 'frequency of the discriminatory conduct;

27   its severity; whether it is physically threatening or humiliating, or a mere offensive utterance;

28   and whether it unreasonably interferes with an employee's work performance.'"  Faragher,

1  524 U.S. at 787, 118 S.Ct. at 2283, 141 L.Ed.2d 662 (quoting Harris v. Forklift Systems, Inc.,

2  510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

3       "The required showing of severity or seriousness of the harassing conduct varies

4  inversely with the pervasiveness or frequency of the conduct." Ellison v. Brady, 924 F.2d

5  872, 878 (9th Cir.1991). See King v. Board of Regents of University of Wisconsin System,

6  898 F.2d 533, 537 (7th Cir.1990) ("[a]lthough a single act can be enough, . . . generally,

7  repeated incidents create a stronger claim of hostile environment, with the strength of the

8  claim depending on the number of incidents and the intensity of each incident.") Accord

9  Andrews v. City of Philadelphia, 895 F.2d 1469, 1484 (10th Cir. 1990); Carrero v. New York

10 City Housing Authority, 890 F.2d 569, 578 (2d Cir. 1989).  For example, in Vance v.

11 Southern Bell Telephone and Telegraph Co., 863 F.2d 1503, 1510 (11th Cir. 1989), the court

12 held that two incidents in which a noose was found hung over an employee's work station

13 were sufficiently severe to constitute a jury question on a racially hostile environment.

14      It is undisputed that Plaintiff has demonstrated that she was subjected to two instances

15 of sexually harassing verbal conduct.  The nature of the harassing comments made to

16 Plaintiff – though they were not pervasive – were severe.  The test for severity was

17 established "to ensure that courts and juries do not mistake ordinary socializing in the

18 workplace-such as male-on-male horseplay or intersexual flirtation-for discriminatory

19 "conditions of employment.'" Oncale, 523 U.S. at 81.  It is clear from the context that the

20 harassing comments made to Plaintiff cannot be construed as having been done during

21 horseplay or as a sign of flirtation.  In stark contrast to horseplay or flirtation, the comments

22 made to Plaintiff were harassing and abusive in nature, especially in light of the fact that one

23 of the comments was made by Plaintiff's then-supervisor, Mr. Beaman, after a heated

24 discussion between Plaintiff and Mr. Beaman.  The comments were unwelcome by Plaintiff

25 and were sufficiently severe to alter the condition of Plaintiff's workplace.  This is evidenced

26 by Plaintiff's claim of humiliation and embarrassment to the point that she could not bring

27 herself to report that such derogatory comments were made and directed at her.  Moreover,

28

1    the Court finds that the harassing language is subjectively offensive and vulgar to the point
2    that a reasonable person could find the work environment hostile or abusive.

3    Considering all of the circumstances, the Court finds that the sexually harassing
4    comments made to Plaintiff, though they were not frequent in number, were harassing in
5    nature, unwelcome, severe, humiliating, objectively and subjectively offensive, hostile and
6    abusive. Accordingly, Defendants' Motion for Summary Judgment is denied as to Plaintiff's
7    sexual harassment cause of action.

8    **V.    RACIAL HARASSMENT CLAIM**

9    Defendants contend that Plaintiff's race harassment claim fails as a matter of law
10   because Plaintiff failed to exhaust her administrative remedies with regard to this claim.
11   Plaintiff asserts that she brings her racial discrimination claim under 41 U.S.C. § 1981, which
12   does not require a litigant to exhaust administrative remedies before bringing suit. The Court
13   interprets Plaintiff's assertion to mean that she brings her racial harassment claim under 42
14   U.S.C. § 1981.

15   Section 1981 of Title 42 protects the equal right of "[a]ll persons within the
16   jurisdiction of the United States" to "make and enforce contracts" without respect to race.
17   42 U.S.C. § 1981(a). The statute defines "make and enforce contracts" to "includ[e] the
18   making, performance, modification, and termination of contracts, and the enjoyment of all
19   benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. §
20   1981(b).

21   To establish the *prima facie* hostile work environment claim under either Title VII or
22   42 U.S.C. § 1981, Plaintiff must raise a triable issue of fact as to whether (1) she was
23   "subjected to verbal or physical conduct" because of her race, (2) "the conduct was
24   unwelcome," and (3) "the conduct was sufficiently severe or pervasive to alter the conditions
25   of [Plaintiff's] employment and create an abusive work environment." Kang v. U. Lim Am.,
26   Inc., 296 F.3d 810, 817 (9th Cir. 2002).

27   In the instant case, Plaintiff states that she overheard Desk Manager Jerry Schwelling
28   use the word "nigger" "at least several times." Plaintiff also states that while she was

1    employed at Midway Nissan, Mr. Patrick Beaman referred to Middle-Eastern customers as

2    "dot-heads,""sand-niggers," and "cheap."  At her deposition, Plaintiff stated that she once

3    overheard Mr. Beaman refer to an Hispanic male job applicant as a "wetback who's too big

4    for his shoes" (Jerome Depo. 287:12-16); that she once overheard Mr. Beaman refer to a

5    Hispanic employee as an "overdressed spick in a cheap suit" (Jerome Depo. 288:23-289:4);

6    and that she overheard coworker Jerry Schwelling use the term "nigger."  (Jerome Depo.

7    82:21-83:1.).  Finally, Plaintiff asserts that on four occasions she complained to Mr. Cleaves

8    that she could not find enough "twenty-year old white guys with flat guts" to hire as salesmen

9    at Midway Nissan.

10           Defendants argue that Plaintiff's claim of racial harassment fails because the

11    comments she overheard were directed to persons of other races than her own Caucasian

12    race.  Defendants further argue that Plaintiff lacks standing to assert a racial harassment

13    claim premised on derogatory racial comments concerning persons of other races.

14           To establish a *prima facie* case of racial harassment a plaintiff must show that she was

15    subjected to verbal or physical conduct based on her membership in a protected class based

16    on her own race.  Kang, 296 F.3d at 817.  See also Vasquez v. County of Los Angeles,249

17    F.3d 634 (9th Cir. 2003); Galdemez v. Potter, 415 F.3d 1015, 1023 (9th Cir. 2005); Mendoza

18    v. Sysco Food Services of Arizona, Inc., 337 F.Supp. 2d 1172, 1186 (9th Cir. 2004).  Plaintiff

19    has not established that she is a member of a protected class based on her Caucasian race.

20    Furthermore, the statements that Plaintiff alleges were racially discriminatory were not in

21    reference to her own race.

22           Plaintiff argues that, even though she is Caucasian and the racially discriminatory

23    comments were not made about her, she still has a claim under Title VII because of the

24    pervasiveness of the comments.  Plaintiff relies on McGinest v. GTE Service Corp., 360 F.3d

25    1103, 1117 (9th Cir. 2004) which states, "if racial hostility pervades a workplace, a plaintiff

26    may establish a violation of Title VII, even if such hostility was not directly targeted at the

27    plaintiff."  However, the Plaintiff in McGinest was African American.  Furthermore, the

28    court in McGinest elaborated that racially harassing comments not directed at a plaintiff must

- 14 -

1   be made at another "in order to anger and harass" the plaintiff. Id. at 1118. Plaintiff has not
2   made that assertion here.

3   Even if Plaintiff had made such an assertion, she still cannot meet the first prong of
4   the *prima facie* test for racial discrimination because she is not a member of a protected class.
5   Plaintiff has cited no case law, nor is the Court aware any case, that would allow such a claim
6   to proceed when a plaintiff does not belong to a protected class based on her own race.
7   Therefore, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's racial
8   harassment cause of action.

9   **VI.    CLAIM FOR ECONOMIC DAMAGES**

10   Defendants assert that Plaintiff is not entitled to economic damages because Plaintiff
11   did not mitigate her damages. Defendants argue that Plaintiff did not use reasonable
12   diligence to obtain a substantially equivalent job, a number of which were available when
13   Plaintiff's employment with Midway ended.

14   Title VII "requires the claimant to use reasonable diligence in finding other suitable
15   employment." Ford Motor Co. v. EEOC, 458 U.S. 219, 231, 102 S.Ct. 3057, 3065, 73
16   L.Ed.2d 721 (1982). However, Defendants have the burden of proving that Plaintiff failed
17   to mitigate her damages. Sangster v. United Air Lines, Inc., 633 F.2d 864, 868 (9th Cir.
18   1980), cert. denied, 451 U.S. 971, 101 S.Ct. 2048, 68 L.Ed.2d 350 (1981). To satisfy this
19   burden, Defendants have to prove "that, based on undisputed facts in the record, during the
20   time in question there were substantially equivalent jobs available, which [the plaintiff] could
21   have obtained, and that [the plaintiff] failed to use reasonable diligence in seeking one."
22   EEOC v. Farmer Bros. Co., 31 F.3d 891, 906 (9th Cir. 1994) (emphasis in original). See also
23   Edwards v. Occidental Chem. Corp., 892 F.2d 1442, 1449 (9th Cir. 1990); Sias v. City
24   Demonstration Agency, 588 F.2d 692, 696 (9th Cir. 1978).

25   Defendants have included an itemization of the positions Plaintiff has held since her
26   work at Midway ended. These positions include work as an independent contractor for three
27   months where she earned $1,035 over three months; work with a pharmaceutical research
28   company where Plaintiff earned $2,700; work with four mortgage companies where she

1   earned between $21, 019 and $22,019; and work doing interior design where Plaintiff earned

2   $3,000.    Defendants claim that Plaintiff did not apply for or acquire a position a

3   "substantially equivalent" position at a car dealership in the Phoenix area, of which there

4   were several at the time Plaintiff's position at Midway ended.  As evidence, Defendants

5   submit the Declaration of Thomas M. Mitchell, Ph.D. in which Dr. Mitchell states that there

6   were numerous job listings in the Arizona Republic newspaper for jobs in the auto sales

7   industry in December 2002.

8          However, Defendants have provided an itemization of the positions Plaintiff has held

9   since she left Midway.  The Court finds that Defendants have not met their burden of proving

10  that Plaintiff did not mitigate her damages.  Whether Plaintiff has *adequately* mitigated her

11  damages is not an issue appropriately determined at this point in the proceedings and on

12  summary judgment.  Rather, it is a question for the jury to decide.

13                                          **CONCLUSION**

14         For the foregoing reasons,

15         **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 65) is

16  granted in part and denied in part in accordance with this Order.

17         **IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment is

18  granted as to Plaintiff's religious discrimination cause of action.

19         **IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment is

20  granted as to Plaintiff's age discrimination cause of action.

21         **IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment is

22  granted as to Plaintiff's retaliation cause of action.

23         **IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment is

24  granted as to Plaintiff's racial harassment cause of action.

25         **IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment is

26  denied as to Plaintiff's sexual discrimination cause of action.

27         **IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment is

28  denied as to Plaintiff's sexual harassment cause of action.

1       **IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment is

2   denied as to Plaintiff's claim for economic damages.

3       **IT IS FURTHER ORDERED** that the parties' request for oral argument is denied.

4       **IT IS FURTHER ORDERED** that this matter is set for Status Hearing on April 23,

5   2007 at 4:15 p.m.

6       DATED this 28th day of March, 2007.

7

8

9

10                          Mary H. Murgula
                            United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28